UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ZAINAB CHAABAN,

       Plaintiff,

v.

CITY OF DETROIT, MICHIGAN
DEPARTMENT OF CORRECTIONS,
DETROIT DETENTION CENTER,
HEIDI E. WASHINGTON, and
JODI DEANGELO,

       Defendants.

Case No. 20-cv-12709

Honorable Nancy G. Edmunds

_____/

**OPINION AND ORDER ON MOTIONS TO DISMISS [12, 14, 25, 30]**

Plaintiff Zainab Chaaban, a Muslim woman who wears a hijab, alleges in her Amended Complaint that Defendants City of Detroit, Detroit Detention Center,[1] Michigan Department of Corrections ("MDOC"), Heidi E. Washington (Director of MDOC), and Jodi Deangelo (Warden) violated her rights under the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. § 2000cc, the Free Exercise Clause of the First Amendment to the United States Constitution, and Article I, Section 4 of the Michigan State Constitution when they forced Plaintiff to remove her hijab for a booking photograph after she was arrested in May of 2019. Plaintiff asks for money damages, including punitive damages, along with injunctive and declaratory relief. Before the Court are motions to dismiss the Amended Complaint by Defendants City of Detroit (ECF No. 25) and MDOC along with Washington and DeAngelo (together, "MDOC Defendants") (ECF

---

[1] Detroit Detention Center was dismissed as a defendant from this action by stipulation of the parties. (ECF No. 24.)

1

No. 30).[2] For the reasons stated below, the Court GRANTS IN PART AND DENIES IN PART each motion.

I.     **Factual Background**

Plaintiff Zainab Chaaban wears a hijab pursuant to her Muslim faith. (Amended Complaint, ECF No. 18, PageID.101 ¶¶ 4, 11.) For many observant Muslim women, wearing a hijab or "covering" involves wearing a headscarf over one's hair, ears, and neck at all times when the wearer is in the presence of men who are not part of her immediate family. (*Id.* ¶¶ 11, 12.) Plaintiff does not wear a niqab, or face veil. (*Id.* ¶ 11.)

In May of 2019, Plaintiff was arrested and taken to the Detroit Detention Center, a detention facility that holds pre-arraigned detainees for up to 72 hours. (*Id.* ¶ 48; ECF No. 12-2, PageID.71 ¶ 4.) The Detroit Detention Center operates under an interagency agreement between the Detroit Police Department and MDOC. (ECF No. 18, PageID.104 ¶ 18; ECF No. 12-2, PageID.71 ¶ 4) (*see also* ECF No. 33-1, PageID.335.)[3] Under that agreement, MDOC "provides custody and security services" to the Detroit Police Department and the Michigan State Police for up to 200 arrestees. (ECF No. 33-1.)

While in custody, during the booking process, Plaintiff alleges she was subject to MDOC's Prisoner Photographic Identification Policy (the "Photograph Policy"). Section 04.04.133(B) of the Photograph Policy states that when an individual is processed into the MDOC, a photo shall be taken of the prisoner's face and directs that "headgear shall not be worn." (*Id.* ¶¶ 17, 48, 52.) Plaintiff states that under the Photograph Policy, she

---

[2] The Court dismisses as moot motions to dismiss the original complaint filed by the City of Detroit (ECF No. 14) and MDOC/Detroit Detention Center (ECF No. 12).
[3] The Court considers the Interagency Agreement as it is referenced in Plaintiff's pleadings and "integral to her claims." *Commercial Money Ctr., Inc. v. Illinois Union Ins. Co.*, 508 F.3d 327, 335-36 (6th Cir. 2007)

was forced to remove her hijab for her booking photograph in the presence of male staff and despite her objection that removing her hijab violated her religious beliefs. (*Id.* ¶¶ 52, 53, 57, 58.) According to the Amended Complaint, MDOC and City of Detroit officers ordered Plaintiff to remove her hijab and threatened to make her "sleep on the concrete floor of the booking cell without a bed, blanket, mattress, or pillow" if she did not comply. (*Id.* ¶¶ 52, 55.) Plaintiff states she complied and removed her hijab as a result of those threats. (*Id.* ¶ 56.)

Plaintiff alleges that after her booking photograph was taken, a copy of the photograph went into her file which was then disseminated to and viewed by male officers and male members of the public who made requests for the photo pursuant to the Freedom of Information Act ("FOIA"). (*Id.* ¶ 59, 61, 62.) The photo was also placed on a wristband that Plaintiff was required to wear and present for inspection while under the custody of MDOC and the City of Detroit. (*Id.* ¶ 60.)

Plaintiff was tried, acquitted of all charges, and released from custody (*Id.* ¶ 51, 61.) She initiated this action by filing a complaint against MDOC and the City of Detroit along with Defendants Washington and DeAngelo in both their individual and official capacities. (ECF No. 1.) Plaintiff later filed an Amended Complaint "to include specific allegations against the City of Detroit." (ECF No. 18.)

On December 14, 2020 the City of Detroit filed a motion to dismiss Plaintiff's Amended Complaint in lieu of filing an answer. (ECF No. 25.) In its motion, the City of Detroit argues Plaintiff's complaint fails to state the elements of any cause of action against the City of Detroit and therefore should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6).

The MDOC Defendants also filed a motion to dismiss in which it argues Plaintiff's claims for injunctive and declaratory relief are moot, the claims for money damages are barred by sovereign and qualified immunity, and that claims for money damages against Defendants Washington and DeAngelo in their individual capacities are barred under RLUIPA. (ECF No. 30.) The MDOC Defendants also argue Defendant Washington is absolutely immune from suit with respect to Plaintiff's state law claim and that the Court should decline to exercise supplemental jurisdiction over the state law claim.

Plaintiff states in her response to the MDOC Defendants' motion that she seeks monetary damages from the individual Defendants only and does not seek to hold MDOC liable for monetary damages. (ECF No. 35, PageID.379 n. 14.) Accordingly, the Court DISMISSES the federal claims for damages against MDOC and Defendants Washington and DeAngelo in their official capacities.[4]

## II.     Legal Standard

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of a case where the complaint fails to state a claim upon which relief can be granted. When reviewing a motion to dismiss under Rule 12(b)(6), a court must "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir.

---

[4] As Plaintiff has agreed to drop the RLUIPA and First Amendment claims for monetary damages against MDOC, the Court finds no need to address the MDOC Defendants' unopposed argument that sovereign immunity bars money damages on the federal claims. (ECF No. 30, PageID.278.) To the extent Plaintiff means only to drop the claims against MDOC itself, and not Defendants Washington and DeAngelo in their official capacities, the Court relies on *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989), in dismissing claims for money damages against those defendants in their official capacities only. *See id.* ("[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office... As such, it is no different from a suit against the State itself.").

2007). But the court "need not accept as true legal conclusions or unwarranted factual inferences." *Id.* (quoting *Gregory v. Shelby County*, 220 F.3d 433, 446 (6th Cir. 2000)).

A plaintiff's factual allegations "must do more than create speculation or suspicion of a legally cognizable cause of action; they must show entitlement to relief." *LULAC v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007). Dismissal is appropriate if the plaintiff failed to offer sufficient factual allegations that make the asserted claim plausible on its face. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A "claim is facially plausible when a plaintiff 'pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.' " *Matthew N. Fulton, DDS, P.C. v. Enclarity, Inc.*, 907 F.3d 948, 951-52 (6th Cir. 2018) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

When deciding a motion under Rule 12(b)(6), the Court looks only to the pleadings. *Jones v. City of Cincinnati*, 521 F.3d 555, 562 (6th Cir. 2008). But the Court also may consider the documents attached to them, *Commercial Money Ctr., Inc. v. Illinois Union Ins. Co.*, 508 F.3d 327, 335 (6th Cir. 2007) (citing Fed. R. Civ. P. 10(c)), documents referenced in the pleadings that are "integral to the claims," *id.* at 335-36, documents that are not mentioned specifically but which govern the plaintiff's rights and are necessarily incorporated by reference, *Weiner v. Klais & Co., Inc.*, 108 F.3d 86, 89 (6th Cir. 1997), *abrogated on other grounds by Swierkiewicz v. Sorema, N.A.*, 534 U.S. 506 (2002), and matters of public record, *Northville Downs v. Granholm*, 622 F.3d 579, 586 (6th Cir. 2010). Beyond that, however, assessment of the facial sufficiency of the complaint ordinarily must be undertaken without resort to matters outside the pleadings. *Wysocki v. Int'l Bus. Mach. Corp.*, 607 F.3d 1102, 1104 (6th Cir. 2010).

5

### III. Analysis

**A. Plaintiff's Claims For Injunctive and Declaratory Relief Are Not Moot**

The MDOC Defendants argue that Plaintiff's injunctive and declaratory relief claims are moot because she is no longer in MDOC custody and there is no risk MDOC will release her booking photograph. (ECF No. 30, PageID.272.)

In support of their argument that MDOC will not release Plaintiff's booking photograph pursuant to a FOIA request, the MDOC Defendants attach to their motion a declaration from Andrew Phelps, a manager in the Policy/FOIA/Offender ADA Section of MDOC. (ECF No. 12-2, PageID.71 ¶1.) The Court considers the Phelps declaration as a document "incorporated by reference" into the Amended Complaint as it relates entirely to Plaintiff's assertion that MDOC released or will release Plaintiff's booking photograph in response to a FOIA request. (*See* ECF No. 18 ¶¶ 61, 73.) According to the declaration, Plaintiff's allegation that MDOC released her photograph pursuant to FOIA requests is inaccurate. (ECF No. 12-2, PageID.72 ¶ 6.) Moreover, Phelps states that if MDOC did receive a FOIA request for a detainee's booking photograph, it would refer the request to the City of Detroit or the Detroit Police Department. (*Id.*) The statements in Phelps' declaration are consistent with the FOIA request exhibits attached to the City of Detroit's motion to dismiss. (ECF No. 25-1, 25-2.) These FOIA requests (which are considered by the Court as they are referenced in the pleadings and integral to Plaintiff's claims) are addressed to the City of Detroit FOIA Coordinator, not MDOC.

Federal courts may only adjudicate actual cases and live controversies. *DeFunis v. Odegaard*, 416 U.S. 312, 316 (1974). If events occurring before or during the pendency of a case make it "impossible for the court to grant any effectual relief whatever. . ." the

6

case may be dismissed as moot. *Coal. for Gov't Procurement v. Fed. Prison Indus., Inc.*, 365 F.3d 435, 458 (6th Cir. 2004) (quoting *Church of Scientology of Cal. v. United States*, 506 U.S. 9, 12 (1992)). But "even the availability of a partial remedy is sufficient to prevent [a] case from being moot." *Calderon v. Moore*, 518 U.S. 149, 150 (1996) (per curiam) (citing *Church of Scientology of Cal.*, 506 U.S. at 13). Thus, whether a claim is moot turns on whether a court can provide "any effectual relief."

Plaintiff has been released from MDOC custody and MDOC has shown through Phelps' declaration that it is not responsible for disseminating Detroit Detention Center booking photographs through FOIA. Notably absent from MDOC's motion, however, is any assertion that MDOC will not maintain Plaintiff's photograph for its own internal purposes, keep it in a permanent file, or allow the photograph to be viewed by male members of its staff. Setting this omission aside for the moment, Plaintiff's claims for declaratory and injunctive relief are still under this Court's jurisdiction as they fall under the exception to the mootness doctrine for being "capable of repetition, yet evading review." *Kingdomware Technologies, Inc. v. U.S.*, 136 S.Ct. 1969 (2016) (citing *Spencer v. Kemna*, 523 U.S. 1 (1998)). This exception applies "only in exceptional situations," where (1) "the challenged action [is] in its duration too short to be fully litigated prior to cessation or expiration," and (2) there [is] a reasonable expectation that the same complaining party [will] be subject to the same action again." *Id.*

The MDOC Defendants argue Plaintiff does not have a reasonable expectation that she will be arrested in the State of Michigan and subjected to the same actions again thus the exception does not apply. (ECF No. 30, PageID.275.) In support of this argument, Defendants point to *Kensu v. Haigh*, 87 F.3d 172 (6th Cir. 1996), where a state prisoner

brought a civil rights action against corrections officials for opening and examining his legal mail outside his presence. *Id.* at 173. There, the Sixth Circuit found the plaintiff's claims for declaratory and injunctive relief were moot because the plaintiff was no longer confined to an institution that searched his mail. *Id.* at 175.

This case can be distinguished from *Kensu* because the *Kensu* plaintiff was arrested, charged, tried, convicted, and confined to a state prison that searched his mail. By contrast, the Detroit Detention Center, where Plaintiff was held, holds pre-arraigned arrestees for the Detroit Police Department for up to 72 hours. (ECF No. 12-2, PageID.71 ¶ 4.) While the possibility that one might be convicted and sent to state prison at some unknown time in the future may not present "sufficient immediacy and reality" to sustain a claim, the Court finds it to be much more likely, and sufficient for purposes here, that one would be arrested by the Detroit Police and booked. *See Maryland Cas. Co. v. Pac. Coal & Oil Co.*, 312 U.S. 270, 273 (1941) (requiring the legal interests of a party who seeks a declaratory judgment to be "of sufficient immediacy and reality.")

### B. Plaintiff's Claims For Money Damages Against Defendants In Their Individual Capacities Are Barred Under RLUIPA

Plaintiff brings her first cause of action against under the Religious Land Use and Institutionalized Persons Act ("RLUIPA") which provides, in relevant part: "No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution . . . A person may assert a violation of this chapter as a claim or defense in a judicial proceeding and obtain appropriate relief against a government." 42 U.S.C. §§ 2000cc-1-2 (emphasis added).

The MDOC Defendants, relying on *Haight v. Thompson*, 763 F.3d 554, 570 (6th Cir. 2014), argue money damages are not available to Plaintiff on her RLUIPA claim

8

brought against Defendants Washington and DeAngelo in their individual capacities. (ECF No. 30, PageID.280.) Plaintiff did not respond to this argument in her brief, but another court in this district recently identified competing authorities on this issue:

> In *Sossamon v. Texas*, 563 U.S. 277, 288 (2011), the Supreme Court held that sovereign immunity was not waived by Congress in the enactment of the RLUIPA, and thus, suits for money damages against officials in their official capacities were barred by Eleventh Amendment sovereign immunity.
>
> Relying on the Supreme Court's reasoning in *Sossamon*, the Sixth Circuit in *Haight v. Thompson*, 763 F.3d 554, 570 (6th Cir. 2014), held that the RLUIPA does not permit individual capacity suits for money damages: "Congress's failure to speak so clearly here renders any putative individual-capacity, money-damages condition in RLUIPA *in*appropriate." (emphasis in original).
>
> Most recently, in [*Tanzin v. Tanvir*, 141 S. Ct. 486 (2020)], while addressing a claim under a separate statute, the Religious Freedom Restoration Act (RFRA), which contains an identical "appropriate relief" clause as the RLUIPA, the Supreme Court concluded that RFRA allows money-damages suits against officials sued in their individual capacities. 141 S. Ct. at 492. The Court explicitly stated that this decision was not in conflict with *Sossamon*. *Id.* at 492–93. Thus, *Tanzin* does not expressly overrule *Haight*, nor does it mention the RLUIPA.

*Catlett v. Washington*, No. 20-13283, 2021 WL 3680196, at *5 (E.D. Mich. Aug. 19, 2021) (Judge Borman).

The *Catlett* court identified two post-*Tanzin* district court decisions that discussed whether RLUIPA permitted individual capacity suits for money damages. *Id.*; *see also Ruplinger v. Louisville/Jefferson Cty. Metro Gov't*, No. 3:19-CV-583-DJH-RSE, 2021 WL 682075 (W.D. Ky. Feb. 22, 2021); *Mease v. Washington*, No. 2:20-CV-176, 2021 WL 1921071 (W.D. Mich. May 13, 2021). In *Ruplinger*, the Western District of Kentucky held that, in the absence of Sixth Circuit guidance following *Tanzin*, the plaintiff's claim for

9

damages under the RLUIPA was not barred by Eleventh Amendment immunity. 2021 WL 682075, at *6. In *Mease*, the Western District of Michigan came to the opposite conclusion reasoning that "the basis of the *Haight* court's decision—the need for clarity in statutes promulgated under the Spending and Commerce Clauses—did not apply in *Tanzin*." *Mease*, 2021 WL 1921071, at *16. Accordingly, the court in *Mease* held that *Tanzin* did not abrogate *Haight* and that *Haight* remains controlling authority in this circuit. *Id.*

Like the court in *Catlett*, this Court finds the reasoning in *Mease* to be persuasive on this issue. Thus, without further guidance from the Sixth Circuit, the Court finds *Haight* to be controlling and DISMISSES Plaintiff's RLUIPA claim for money damages against Defendants Washington and DeAngelo in their individual capacities.

### C. Individual Defendants Are Not Entitled To Qualified Immunity

The MDOC Defendants move to dismiss the RLUIPA, First Amendment, and Michigan Constitutional claims against Defendants Washington and DeAngelo on the basis of qualified immunity. According to Defendants, Plaintiff's right to refuse to remove her hijab for her booking photograph or while in view of male employees was not "clearly established."

"The doctrine of qualified immunity shields government officials performing discretionary functions from civil liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Baynes v. Cleland*, 799 F.3d 600, 609 (6th Cir. 2015) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). "Once raised, it is the plaintiff's burden

to show that the defendants are not entitled to qualified immunity." *Kinlin v. Kline*, 749 F.3d 573, 577 (6th Cir. 2014) (citing *Burgess v. Fischer,* 735 F.3d 462, 472 (6th Cir.2013)).

There are two questions a court must consider when deciding whether a government official is entitled to qualified immunity: "First, viewing the facts in the light most favorable to the plaintiff, has the plaintiff shown that a constitutional violation has occurred? Second, was the right clearly established at the time of the violation? These prongs need not be considered sequentially." *Baynes*, 799 F.3d at 610 (quoting *Miller v. Sanilac County*, 606 F.3d 240, 247 (6th Cir. 2010)). If either prong is not met, the government officer is entitled to qualified immunity." *Doe v. Miami Univ.*, 882 F.3d 579, 604 (6th Cir. 2018) (citing *Courtright v. City of Battle Creek*, 839 F.3d 513, 518 (6th Cir. 2016)).

Regarding the constitutional violation prong, Plaintiff has sufficiently alleged her Muslim faith requires the wearing of a hijab when she is in the presence of men who are not part of her immediate family, and that being required to remove her hijab in the presence of male staff, stand for an identification photograph without her hijab, or carry around that photograph as identification throughout the period of incarceration violates her sincerely held religious beliefs as does the dissemination of the photograph to male employees or members of the public. (ECF No. 18 ¶¶ 11-15.) Thus, a constitutional violation has been plausibly alleged.

Whether a right is clearly established "turns on the 'objective legal reasonableness of the action, assessed in light of the legal rules that were clearly established at the time it was taken." *Pearson v. Callahan*, 555 U.S. 223, 244 (2009) (quoting *Wilson v. Layne*, 526 U.S. 603, 614 (1999)). This does not require the existence of a previous case with

"materially similar" facts. *Hope v. Pelzer*, 536 U.S. 730, 731 (2002). "Qualified immunity operates to ensure that before they are subjected to suit, officers are on notice that their conduct is unlawful." *Id.* And "officials can be on notice that their conduct violates established law even in novel factual situations." *Id.* The question a court must ask is "whether the state of the law . . . gave [the defendants] fair warning that [the plaintiff's] alleged treatment was unconstitutional." *Id.*

The First Amendment forbids all laws "prohibiting the free exercise" of religion. Even in a prison setting, established law forbids regulations that would arbitrarily and capriciously impinge on an inmate's constitutional rights. *Turner v. Safley*, 482 U.S. 78, 89 (1987). The Supreme Court established in *Turner* that "when a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." 482 U.S. at 89. *See also Brown v. Johnson*, 743 F.2d 408, 411–12 (6th Cir. 1984) ("Where an inmate's religious freedom is at stake, correctional officials may only adopt regulations which are 'reasonably and substantially' justified by official concern for internal security and inmate discipline.").

Plaintiff's allegations are sufficient to show the MDOC Defendants were "on notice" that their policy violates a Muslim woman's right to freely exercise her religion. Plaintiff alleges she "made her dissent and protest to the forceful removal of her hijab extremely clear" and "asserted her right to keep her hijab on for the photograph because it is representative of a sincerely-held religious belief, as a Muslim-woman." (ECF No. 18, PageID.111 ¶ 53.) Moreover, it defies logic that officers operating in a facility in Detroit,

near one of the nation's largest Muslim communities, would not be aware of the religious significance of the hijab.[5]

At this stage in the proceeding, The MDOC Defendants have not established a "legitimate penological interest" for the conduct alleged. Accordingly, Plaintiff states a claim for relief and Defendants Washington and DeAngelo are not immune from suit based upon qualified immunity. *See Wesley v. Campbell*, 779 F.3d 421, 433 (6th Cir. 2015) (noting it is "generally inappropriate for a district court to grant a 12(b)(6) motion to dismiss on the basis of qualified immunity"); *Evans-Marshall v. Bd. of Educ. of Tipp City Exempted Vill. Sch. Dist.*, 428 F.3d 223, 235 (6th Cir. 2005) (Sutton, J, concurring) (observing that it is generally "difficult for a defendant to claim qualified immunity on the pleadings *before discovery* and before the parties (much less the courts) know what is being balanced against what.") (emphasis in original).

### D. Defendant Washington is Not Entitled to Absolute Immunity Under Michigan Law

The MDOC Defendants next argue Defendant Washington, as the Director of MDOC, is entitled to absolute immunity from suit with respect to Plaintiff's Michigan State Constitutional claim. (ECF No. 30, PageID.285.)

---

[5] The Court takes note that Plaintiff has identified numerous examples of federal, state, and local government policies and regulations in place across the United States that recognize the religious interest in the hijab and permit it to be worn in official photographs. (ECF No. 18 ¶¶ 24-36.) For example, the United States Department of State permits those who wear hats or head coverings for religious reasons to keep those coverings in official passport photographs if they submit a signed statement verifying the head covering is part of their religious attire. (*Id.* ¶ 25.) The United States Citizenship and Immigration Services also permits religious head coverings to be worn in photographs. Under its policy, if the head covering casts a shadow or obscures a portion of the wearer's face, the wearer is offered a photographer of the same gender and a private area where he or she can adjust the head covering for the photograph. (*Id.* ¶ 26.) Similar to the federal policies mentioned, the state of Michigan permits an applicant for a driver's license to wear religious headwear as long as it does not touch the person's eyebrows. (*Id.* ¶ 27.) And some police departments have updated their policies to state that Muslim women are not required to remove religious head coverings like hijabs for booking photographs. (*Id.* ¶ 27.)

Defendants' argument stems from the Michigan Supreme Court's holding in *Ross v. Consumers Power Co.*, 363 N.W.2d 641, 667 (Mich. 1984), which was later codified in the Governmental Liability for Negligence Act ("GLNA"), at Mich. Comp. Laws. 691.1407(5). This section of the GLNA shields judges, legislators, and government executives, including the Director of MDOC, from "tort liability for injuries to persons or damages to property if he or she is acting within the scope of his or her judicial, legislative, or executive authority." Mich. Comp. Laws. 691.1407(5).

But "[g]overnmental immunity is not available 'where it is alleged that the state, by virtue of custom or policy, has violated a right conferred by the Michigan Constitution.' " *Wendrow v. Michigan Dep't of Hum. Servs.*, 534 F. App'x 516, 525 (6th Cir. 2013) (citing *Smith v. Dep't of Pub. Health*, 410 N.W.2d 749, 751 (Mich. 1987)). The state's liability is limited to "appropriate cases" defined as those "in which the state's liability would, but for the Eleventh Amendment, render it liable under the 42 U.S.C. § 1983 standard for local governments articulated in *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658 (1978)." *Pleasant v. Zamieski*, 895 F.2d 272, 278 (6th Cir. 1990) (quoting *Smith*, 410 N.W.2d at 794 (Boyle, J., concurring)). In *Monell,* the Supreme Court held that liability may exist only where "the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by the body's officers." 436 U.S. at 690.

Plaintiff sufficiently alleges a constitutional claim for which immunity is not available under the Sixth Circuit's interpretation of *Smith*. The Amended Complaint alleges Plaintiff's right to freely exercise her religion was violated by virtue of MDOC's Photograph

14

Policy. (ECF No. 18 ¶¶ 84, 92.) Thus, Defendant Washington has not demonstrated she is entitled to immunity on this issue.

### E. Plaintiff's Claims Against the City of Detroit

Finally, the Court turns to arguments raised by the City of Detroit in their motion to dismiss the Amended Complaint for lack of pleading specific allegations that would state a claim against the City of Detroit. Plaintiff names the City of Detroit as a defendant in each of the three substantive causes of action she brings as well as her claim for declaratory relief.

#### 1. Plaintiff States A Claim Under RLUIPA

As discussed above, Plaintiff's first cause of action accuses all Defendants, including the City of Detroit, of violating RLUIPA. "RLUIPA prohibits a State from imposing 'a substantial burden on the religious exercise of a person residing in or confined to an institution' unless the government shows that the burden furthers 'a compelling governmental interest' and 'is the least restrictive means' of doing so." *Cavin v. Michigan Dep't of Corr.*, 927 F.3d 455, 458 (6th Cir. 2019) (citing 42 U.S.C. § 2000cc-1(a)). Thus, the plaintiff is required to show (1) she wishes to exercise her religion due to a "sincerely held religious belief" and (2) "that the government substantially burdened that religious exercise." *Id.* (citing *Holt v. Hobbs*, 574 U.S. 352, 352 (2015)); *see also Haight*, 763 F.3d at 559–60 ("[t]o establish a cognizable claim under RLUIPA, the inmate must first demonstrate that a prison policy substantially burdens a religious practice") (citing *Cutter v. Wilkinson,* 544 U.S. 709, 725 n. 13 (2005)). If a plaintiff successfully makes this showing, the burden moves to the defendant to "meet the daunting compelling-interest and least-restrictive-means test." *Id.* at 863.

15

Plaintiff has alleged wearing her hijab is a sincerely held religious belief "core to her identity" and that wearing the hijab is "a mandatory aspect of [her] Muslim identity and faith." (ECF No. 18, PageID.103 ¶¶ 4, 13, 14.) Defendant City of Detroit does not dispute these allegations, but instead argues Plaintiff fails to state a claim against it because Plaintiff has not identified any City of Detroit policy that substantially burdens religious exercise.

Plaintiff was "confined to an institution" at all relevant times for purposes of RLUIPA. It is also undisputed that the Photograph Policy under which Plaintiff was made to remove her hijab is a policy belonging to MDOC, not the City of Detroit. (ECF No. 18, PageID.104.) Nevertheless, Plaintiff has alleged the City of Detroit implemented the policy by "forc[ing] arrestees who wear religious head coverings to remove those head coverings for a photograph." (*Id.*, PageID.102. ¶ 10.) This is a task the City of Detroit is "bound to perform." (*Id.*, PageID.104 ¶ 18.) Moreover, Plaintiff alleges City of Detroit officers "falsely stated that the law necessitated for the removal of [her] hijab; threatening to make [her] sleep on the concrete floor of the booking cell without a bed, blanket, mattress, or pillow if she continued to be noncompliant" and that Plaintiff removed her hijab as a direct consequence. (*Id.*, PageID.111 ¶ 55, 56.) According to the allegations in the Amended Complaint, these actions by the City of Detroit "substantially burdened Plaintiff's religious exercise" in several ways—by requiring to remove her hijab to be photographed (*Id.*, PageID.113 ¶ 72); by creating a permanent public record of that image which has been and could continue to be released to the public (*Id.*, ¶ 73); and by requiring Plaintiff to wear the photograph on a wristband and present it to male staff (*Id.*, ¶ 74).

These allegations, accepted as true and construed in the light most favorable to Plaintiff, are sufficient to state a claim under RLUIPA. *See Directv, Inc.*, 487 F.3d 471, 476 (6th Cir. 2007).

### 2. Plaintiff States A Claim Under 42 U.S.C. § 1983

Plaintiff's second cause of action, brought under 42 U.S.C. § 1983, alleges Defendants, including the City of Detroit, violated Plaintiff's right to freely exercise her religion pursuant to the First Amendment to the United States Constitution. Section 1983 creates a federal cause of action against "any person" who deprives someone of a federal constitutional right while acting under color of state law. *Monell*, 436 U.S. at 691–92. Although § 1983 does not abrogate state sovereign immunity, the statute provides a vehicle to sue local governments for constitutional violations. *Id.* at 690. A city can be a "person" for the sake of a § 1983 claim. *Id.*

There are at least four avenues through which a plaintiff can hold a municipality liable under § 1983. *Thomas v. City of Chattanooga*, 398 F.3d 426, 429 (6th Cir. 2005). A plaintiff can look to: "(1) the municipality's legislative enactments or official agency policies; (2) actions taken by officials with final decision-making authority; (3) a policy of inadequate training or supervision; or (4) a custom of tolerance or acquiescence of federal rights violations." *Id.* (citing, among others, *Monell*, 436 U.S. at 694). The official policy or custom must be the "moving force" behind the constitutional violation. *City of Canton v. Harris*, 489 U.S. 378, 389 (1989) (quoting *Monell*, 436 U.S. at 694); *Meyers v. City of Cincinnati*, 14 F.3d 1115, 1120 (6th Cir. 1994) (noting that a municipality can be liable under § 1983 for "a pervasive custom or practice, of which the city lawmakers know or should know").

17

Plaintiff has sufficiently alleged a constitutional violation. *See* Section III(E)(1) of this opinion, *supra*. The issue here is whether the City of Detroit can be held liable for a policy which did not originate with the City, but which has been alleged to be enforced by the City and its officers under the authority of the interagency agreement between the City of Detroit and MDOC. (*See* ECF No. 18 ¶ 55 wherein Plaintiff alleges that City of Detroit officers, among others, participated in the booking process.) Per the terms of the agreement, the Detroit Police Department "[s]hall be made aware of and not contravene MDOC policy and procedure." (*See* ECF No. 33-1, PageID.) Thus, the City of Detroit was aware of the Photograph Policy and promulgated that policy or, at a minimum, adopted "a custom of tolerance or acquiescence of federal rights violations." *Thomas*, 398 F.3d at 429. Because the City of Detroit has not identified any authority to suggest that it cannot be held responsible under existing law, the Court finds that dismissal of Plaintiff's claim at this stage of the proceeding is improper.

### 3. *Plaintiff Does Not State A Claim For Damages Under The Michigan State Constitution.*

In *Jones*, the Michigan Supreme Court held that there is no independent damages remedy against a municipality for violations of the Michigan Constitution. *Jones v. Powell*, 612 N.W.2d 423 (Mich. 2000). Relying on *Smith*, 410 N.W.2d 749, the court recognized a narrow remedy available against the state despite its Eleventh Amendment protection from other claims. *Id.* at 337. Unlike in cases against the state, however, the Jones court recognized that a plaintiff may obtain relief from a municipality through other causes of action including common law tort remedies or pursuant to 42 U.S.C. § 1983. Thus, the court found the concerns in *Smith* to be inapplicable in actions such as this one.

Here, Plaintiff has alleged causes of action under RLUIPA and 42 U.S.C. § 1983 in addition to her Michigan Constitutional claim. Accordingly, under *Jones*, Plaintiff fails to state a claim for money damages against the City of Detroit for a violation of the Michigan Constitution.

The court's holding in *Jones* applies only to claims for money damages. Thus, Plaintiff's claims for injunctive and declaratory relief survive the City of Detroit's motion. *See Patriot Ambulance Serv., Inc. v. Genesee County*, 666 F.Supp.2d 712, 717 (E.D. Mich. 2009) (Battani, J.) (dismissing the plaintiff's claims for damages against the defendant county, board of commissioners, and individual commissioners for Michigan Constitutional violations, but holding that to the extent that "Plaintiffs are not seeking monetary relief under the Michigan Constitution, the *Jones* case is inapplicable" and allowing the requests for declaratory judgment to proceed.).

### 4. *Plaintiff's Claim for Declaratory Judgment*

In addition to her federal and state claims, Plaintiff seeks a judgment from this Court, pursuant to Fed. R. Civ. P. 57 and 28 U.S.C. §§ 2201-02, declaring that Defendants' practices violate RLUIPA, the First Amendment, and the Michigan Constitution. Because the Court rejects portions of Defendants' arguments in regard to Plaintiff's substantive claims, Plaintiff's request for declaratory judgment does not fail as a matter of law.

## IV. Conclusion

For the foregoing reasons, the Court **GRANTS IN PART AND DENIES IN PART** the City of Detroit's Motion to Dismiss Plaintiff's First Amended Complaint. (ECF No. 25.) With respect to Plaintiff's Michigan Constitutional claim for money damages, the City of

Detroit's motion is **GRANTED** and that claim is hereby **DISMISSED**. In all other respects, the City of Detroit's motion is **DENIED**.

The Court also **GRANTS IN PART AND DENIES IN PART** the MDOC Defendants' Motion to Dismiss the Amended Complaint. (ECF No. 30.) With respect to Plaintiff's claim for money damages against Defendants Washington and DeAngelo in their individual capacity pursuant to the Religious Land Use and Institutionalized Persons Act, 42 U.S.C. § 2000cc, Defendants' motion is **GRANTED** and that claim is hereby **DISMISSED**. The Court also **DISMISSES** Plaintiff's Religious Land Use and Institutionalized Persons Act and § 1983 claims for damages against MDOC and Defendants Washington and DeAngelo in their official capacities. In all other respects, the MDOC Defendants' motion is **DENIED**.

The Court **DISMISSES AS MOOT** motions to dismiss the original complaint filed by the City of Detroit (ECF No. 14) and MDOC/Detroit Detention Center (ECF No. 12).

Defendants shall file an answer to the Amended Complaint within 21 days of entry of this Order.

SO ORDERED.

s/Nancy G. Edmunds
Nancy G. Edmunds
United States District Judge

Dated: September 7, 2021

I hereby certify that a copy of the foregoing document was served upon counsel of record on September 7, 2021, by electronic and/or ordinary mail.

s/William Barkholz for Lisa Bartlett
Case Manager